UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X   Docket No.:
CHRISTOPHER O'CONNOR,

                                                  Plaintiff,        **COMPLAINT**

            -against-

BIMBO BAKERIES USA, INC.                            **PLAINTIFF DEMANDS**
                                                                                            **A TRIAL BY JURY**

                                                 Defendants.
------------------------------------------------------------------------X

     Plaintiff, CHRISTOPHER O'CONNOR, by his attorney, JESSICA MASSIMI, ESQ., hereby complains of the Defendants, upon information and belief, as follows:

## NATURE OF THE CASE

1. Plaintiff complains pursuant to Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17 (amended in 1972, 1978 and by the Civil Rights Act of 1991, Pub. L. No. 102-166) ("Title VII"), and the New York State Human Rights Law, New York State Executive Law § 296, *et seq.* ("NYSHRL") and seeks damages to redress the injuries Plaintiff has suffered as a result of being discriminated against on the basis of his sex, gender, and sexual orientation, and retaliated against by the Defendants solely for objecting to this discrimination. Plaintiff also brings this claim for negligence, *respondeat superior*, assault, and battery.

## VENUE AND JURISDICTION

2. Venue is properly laid, pursuant to 28 U.S.C. § 1391, et seq., in the Northern District of New York, where Defendant BIMBO BAKERIES USA, INC. maintains a business, and where the majority of the actions complained of herein occurred at BIMBO'S facility located at 111 North 2d Street, in the County of Cattaraugus, City of Olean and State of New York.

3. This Court has jurisdiction of this action pursuant to 28 U.S.C. § 1332.

4. Plaintiff filed a charge with the EEOC on April 22, 2024.

5. Plaintiff received the Right to Sue on September 24, 2024.

## PARTIES

6. At all relevant times mentioned herein, Defendant BIMBO BAKERIES USA, INC. ("BBU"), was and is a foreign business corporation residing in Pennsylvania, doing business in, operating in and existing under the laws of the State of New York, located at 111 North 2d Street, in the County of Cattaraugus, City of Olean and State of New York.

7. At all times mentioned herein, Plaintiff, Christopher O'Connor, was an adult man and resident of the State of Pennsylvania, who worked at BBU's Cattaraugus County location.

8. At all times mentioned herein, Plaintiff Christopher O'Connor was employed by BBU as a bagger.

9. At all times mentioned herein, Derrick (last name unknown) was Plaintiff's supervisor and had the authority to hire, fire, and/or had the power to directly affect the terms and conditions of Plaintiff's employment and in fact did just that as alleged below.

10. At all times mentioned herein, Ryan (last name unknown) was Plaintiff's supervisor and had the authority to hire, fire, and/or had the power to directly affect the terms and conditions of Plaintiff's employment and in fact did just that as alleged below.

11. At all times mentioned herein, Phillip Goodwill was Plaintiff's supervisor and had the authority to hire, fire, and/or had the power to directly affect the terms and conditions of Plaintiff's employment and in fact did just that as alleged below.

12. At all times mentioned herein, Chris Fortuna was Plaintiff's supervisor and manager and had the authority to hire, fire, and/or had the power to directly affect the terms and conditions of Plaintiff's employment and in fact did just that as alleged below.

13. At all times mentioned herein, Anita (last name unknown) was Plaintiff's supervisor and had the authority to hire, fire, and/or had the power to directly affect the terms and conditions of Plaintiff's employment and in fact did just that as alleged below.

14. Derrick, Ryan, Phillip Goodwill, Chris Fortuna, and Anita are collectively referred to herein as "BBU Management" or "BBU Managers."

## MATERIAL FACTS

15. PLAINTIFF is a 29-year-old bi-sexual man and resident of Pennsylvania.

16. At all times relevant, DEFENDANT BIMBO BAKERIES USA, INC. ("BBU" or "DEFENDANT") is a foreign business corporation doing business in, operating in and existing under the laws of the State of New York, located at 111 North 2d Street, in the County of Cattaraugus, City of Olean and State of New York.

17. At all times relevant, DEFENDANT BBU was Plaintiff's employer under the NYSHRL.

18. On February 25, 2023, PLAINTIFF Christopher O'Connor was hired by BBU as a Bagger.

19. DEFENDANT hired PLAINTIFF as a Bagger to work at DEFENDANT'S Bimbo Bakeries location located at 111 N 2d Street, Olean, New York 14760.

20. PLAINTIFF was hired at a pay rate of approximately $22.00 per hour.

21. Christopher O'Connor regularly assisted DEFENDANT in placing items in bags and regularly went above and beyond his job description to advance his employment with DEFENDANT.

22. Prior to the events described herein, which DEFENDANT orchestrated to lay the pre-textual groundwork for, and hasten, PLAINTIFF's assault and termination, DEFENDANTS never subjected PLAINTIFF to any disciplinary action nor wrote him up for any reason.

23. On or about March 7, 2023, BBU employees broke into PLAINTIFF's work locker and stole his money and medicine.

24. PLAINTIFF complained by informing three supervisors, a manager, and the plant manager. They did nothing to effectively address these complaints.

25. In about mid-March 2023, BBU employees took PLAINTIFF's clothes and threw them into storage, forcing PLAINTIFF to climb on top of dirty lockers to obtain his clothing.

26. Plaintiff complained of this harassment to Derrick (last name currently unknown), a BBU supervisor.

27. Again, BBU managers did nothing to effectively address this harassment from BBU employees against PLAINTIFF.

28. In late March 2023, BBU employees began spitting into PLAINTIFF's coffee. PLAINTIFF again reported this to his manager, Ryan, who did nothing to effectively address the continued harassment from BBU employees against PLAINTIFF.

29. In around the same time in March of 2023, coworkers began taking PLAINTIFF's cigarettes out of pockets and crushing them.

30. On April 16, 2023, a BBU employee carved "fag" into PLAINTIFF's locker.

31. PLAINTIFF reported this discrimination and harassment to his union representative, Philip Goodwill, and plant manager Chris Fortuna.

32. In May 2023, BBU held a meeting with PLAINTIFF, his union representatives, Phillip Goodwill, Chris Fortuna, and Anita (last name currently unknown) from BBU corporate, during which they interrogated PLAINTIFF about his sexual orientation. However, BBU still refused to effectively address Mr. O'Connor's complaints of discrimination and obvious safety concerns.

33. Following the May meeting, BBU's harassment against PLAINTIFF continued.

34. For example, BBU employee Kevin Sands threatened to "cold-cock" Mr. O'Connor and "put [him] in the hospital." Mr. Sands made these threats in front of BBU manager, Tony (last name currently unknown), who did nothing to address Mr. Sands' behavior. Instead, BBU baselessly suspended Mr. O'Connor.

35. BBU's discrimination, harassment and threats against Mr. O'Connor escalated.

36. For example, in October 2023, BBU employees broke Mr. O'Connor's locker to the extent that he could not open it or use it.

37. In or around November 2023, PLAINTIFF informed the DEFENDANT that another employee was seriously physically threatening him and continuing to harass and subject him to discrimination. Again, BBU did nothing to intervene or protect PLAINTIFF's physical safety.

38. Specifically, another employee named Sasha Rottenberger repeatedly verbally harassed and severely assaulted PLAINTIFF calling him "Dumb Mf'er" and punched him in the face and head, causing PLAINTIFF to sustain several severe and permanent personal injuries.

39. During his shift on November 2, 2023, Rottenberger continuously yelled at PLAINTIFF that he was a "stupid bitch" and "stupid homo fag." PLAINTIFF complained of Sasha's verbal threats to Ryan (last name unknown) and another manager, who did nothing to address it. No BBU manager or supervisor intervene on Sasha's tirade.

40. On November 2, 2023 at around 12:30 p.m., following his shift, PLAINTIFF was in the locker room getting his work clothes ready for work the next day. At this time, Rottenberger was still calling PLAINTIFF homophobic slurs, this time to another employee. PLAINTIFF did not respond to Rottenberger, nor escalate the situation in any way.

41. In response Sasha escalated his threats and tirade against PLAINTIFF, and charged at Mr. O'Connor, punching him in the face repeatedly, and slamming Mr. O'Connor's head into the wall.

42. PLAINTIFF lost consciousness. At no time did any BBU employee intervene to stop Sasha's assault against PLAINTIFF.

43. In response to being assaulted, BBU terminated PLAINTIFF's employment.

44. PLAINTIFF, distraught and offended by the discriminatory, homophobic, and sexist remarks, informed supervisors and managers of Sasha's harassing and discriminatory comments.

45. On or about November 2023, PLAINTIFF informed Derrick and Chris Fortuna about this discrimination verbally and in writing.

46. At the time, Derrick was DEFENDANT'S Manager.

47. At the time, Chris Fortuna was DEFENDANT'S Oversight Manager.

48. Derrick and Chris Fortuna responded to Christopher O'Connor's complaint of discrimination by acting visibly annoyed and inconvenienced by PLAINTIFF'S complaint of harassment and discrimination.

49. DEFENDANT then terminated Christopher O'Connor.

50. Thus, the DEFENDANT subjected PLAINTIFF to retaliation in the form of adverse employment actions for his complaints of discrimination and harassment against Rottenberger.

51. On November 13, 2023, DEFENDANT, through Chris Fortuna, called Christopher O'Connor into an office and terminated him for not showing up to work.

52. DEFENDANT'S stated reasons for terminating Christopher O'Connor were pre-textual and were nothing more than further discrimination and retaliation for Christopher O'Connor's complaints of discrimination.

53. DEFENDANT'S termination of Christopher O'Connor constitutes discrimination on the basis of Christopher O'Connor's sexual orientation, gender, gender identity, and disability.

54. DEFENDANT'S termination of Christopher O'Connor constituted retaliation for Christopher O'Connor's complaints of discrimination.

55. At the time of Christopher O'Connor's termination, he was earning $25.00 per hour and was working fulltime.

56. Upon information and belief, Christopher O'Connor's performance was above average during the course of his employment with DEFENDANT.

57. Upon information and belief, DEFENDANT terminated Christopher O'Connor's employment solely because of Christopher O'Connor's actual or perceived sexual orientation, gender, gender identity, and because of his complaints of discrimination.

58. Thus, in addition to discriminating against Christopher O'Connor, DEFENDANT also subjected Christopher O'Connor to illegal and ongoing retaliation involving all of the above-described conduct up to and including his termination.

59. DEFENDANT is liable for negligence and deliberate indifference in failing to stop Mr. O'Connor's assault even when they had clear notice and reason to believe the assault would occur.

60. PLAINTIFF felt offended, disturbed, and humiliated by the blatantly unlawful and discriminatory and retaliatory termination.

61. But for the fact that Christopher O'Connor's disability, gender, gender identity, and sexuality, DEFENDANT would not have treated Christopher O'Connor differently and would not have terminated his employment.

62. Christopher O'Connor's performance was, upon information and belief, above average during the course of his employment with DEFENDANT.

63. Christopher O'Connor has been unlawfully discriminated and retaliated against, and as a result, suffers loss of rights, emotional distress, loss of income and earnings.

64. DEFENDANT'S actions and conduct were intentional and intended to harm Christopher O'Connor.

65. As a result of the acts and conduct complained of herein, Christopher O'Connor has suffered and will continue to suffer the loss of income, the loss of a salary, bonuses, benefits and other compensation which such employment entails, and Christopher O'Connor has also suffered future pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses Christopher O'Connor further experienced emotional and physical distress.

### AS A FIRST CAUSE OF ACTION
### FOR DISCRIMINATION UNDER TITLE VII
(Against Defendant BBU)

66. Plaintiff repeats and realleges each and every paragraph above as if said paragraphs were more fully set forth herein at length.

67. This claim is authorized and instituted pursuant to the provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. Section 2000e et seq., for relief based upon the unlawful employment practices of the above-named Defendants. Plaintiff complains of Defendants'

violation of Title VII's prohibition against discrimination in employment based, in whole or in part, upon an employee's gender and sexual orientation.

68. Defendants engaged in unlawful employment practices prohibited by 42 U.S.C. Section 2000e et seq. by discriminating against Plaintiff because of her pregnancy and sex/gender.

69. As such, Plaintiff has been damaged as set forth herein.

**AS A SECOND CAUSE OF ACTION
FOR RETALIATION UNDER TITLE VII**
(Against Defendant BBU)

70. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

71. Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. Section 2000e-3(a) provides it shall be unlawful employment practice for an employer: "(1) to . . . discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under this subchapter.:

72. Defendants retaliated against Plaintiff as described above.

73. Defendants baselessly subjected Plaintiff to adverse employment actions prohibited by this statute.

74. Defendants had no valid business justification for the retaliatory and abusive action taken against Plaintiff following her engagement in protected activity.

75. Defendants' conduct was malicious, willful, outrageous, and conducted with fill knowledge of the law.

76. As such, Plaintiff has been damaged as set forth herein.

### AS A THIRD CAUSE OF ACTION
### FOR SEX AND GENDER DISCRIMINATION
### <u>UNDER THE NEW YORK STATE EXECUTIVE LAW</u>
Against Defendant BBU

77. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

78. <u>New York State Executive Law</u> § 296 provides that, "1. It shall be an unlawful discriminatory practice: (a) For an employer or licensing agency, because of an individual's . . . age, race, creed, color, national origin, gender identity or expression, military status, sex, disability, predisposing genetic characteristics, familial status, marital status, or status as a victim of domestic violence, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment."

79. Defendants violated the section cited herein as set forth.

80. Defendants' conduct was malicious, willful, outrageous, and conducted with fill knowledge of the law.

81. As such, Plaintiff has been damaged as set forth herein.

### AS A FOURTH CAUSE OF ACTION FOR RETALIATION
### <u>UNDER THE NEW YORK STATE EXECUTIVE LAW</u>
Against Defendant BBU

82. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

83. <u>New York State Executive Law</u> § 296(7) provides that it shall be an unlawful discriminatory practice: "For any person engaged in any activity to which this section applies to retaliate or discriminate against any person because he has opposed any practices forbidden under this article."

84. Defendants violated the section cited herein as set forth.

85. Defendants' conduct was malicious, willful, outrageous, and conducted with fill knowledge of the law.

86. As such, Plaintiff has been damaged as set forth herein.

**AS A FIFTH CAUSE OF ACTION**
**FOR NEGLIGENCE**
**PURSUANT TO NEW YORK STATE LAW**
Against Defendant BBU

87. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

88. That at all times hereinafter mentioned, the Defendant BBU assumed responsibility, supervision, and authority over its agents, servants and employees, including but not limited to BBU MANAGEMENT and SASHA ROTTENBERGER , and is liable to Plaintiff for the intentional, reckless, and negligent acts complained of herein under the theories of vicarious liability and *respondeat superior*.

89. The acts complained of herein resulted from the defendant BBU, through its agents, servants, and employees, breaching its duty to properly assign, train, supervise or discipline its BBU personnel.

90. The Defendant BBU's failure to properly assign, train, supervise or discipline its employees, including the personnel involved herein, constitutes acquiescence in, and tolerance of, ongoing unconstitutional conduct and created the atmosphere allowing Defendant to believe they could, with impunity, allow Plaintiff to be attacked, assaulted, and discriminated and retaliated against.

91. The Defendant BBU's failure to properly assign, train, supervise or discipline its employees, constitutes acquiescence in, and tolerance of, ongoing unconstitutional conduct and created

the atmosphere allowing Defendant to believe they could, with impunity, refuse to keep security measures in proper working order, and refuse to provide proper staffing and security in area where Plaintiff was assaulted.

92. By reason of the foregoing, Defendant BBU, its agents, servants and employees, including but not limited to BBU MANAGEMENT and SASHA ROTTENBERGER, were negligent in that they failed and refused to use such care in the performance of their duties as reasonably prudent employees would have used under similar circumstances.

93. As a result of the foregoing, Plaintiff suffered physical injuries, conscious pain and suffering, mental anguish, shock, fright, apprehension, embarrassment, humiliation, and deprivation of his rights.

94. Plaintiff is entitled to the maximum amount allowed under the law.

**AS A SIXTH OF ACTION**
**FOR *RESPONDEAT SUPERIOR*_**
Against Defendant BBU

95. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

96. The defendant BBU employed the individual BBU MANAGEMENT and SASHA ROTTENBERGER and is therefore vicariously liable for the actions and inactions, including negligence, of those individual defendants.

97. In the alternative, defendant BBU negligently employed or supervised the individual BBU MANAGEMENT and SASHA ROTTENBERGER.

98. As a result of the foregoing, Plaintiff suffered physical injuries, conscious pain and suffering, mental anguish, shock, fright, apprehension, embarrassment, humiliation, and deprivation of his rights.

**AS A SEVENTH CAUSE OF ACTION**
**FOR ASSAULT AND BATTERY**
Against Defendant BBU

99. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

100. As alleged herein, the BBU MANAGEMENT and SASHA ROTTENBERGER intentionally placed Plaintiff in fear of imminent harmful and offensive contact.

101. As a result of the foregoing, Plaintiff suffered physical injuries, conscious pain and suffering, mental anguish, shock, fright, apprehension, embarrassment, humiliation, and deprivation of his rights.

**JURY DEMAND**

102. Plaintiff requests a jury trial on all issues to be tried.

**WHEREFORE**, Plaintiff respectfully requests a judgment against Defendants:

A.  Declaring that Defendants engaged in unlawful employment practices prohibited by Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17 (amended in 1972, 1978 and by the Civil Rights Act of 1991, Pub. L. No. 102-166) ("Title VII"), the New York State Human Rights Law, New York State Executive Law § 296, *et seq.* ("NYSHRL"); in that Defendants discriminated against Plaintiff on the basis of his sex, gender, status as a man, and status as a bisexual man, and that Defendant retaliated against Plaintiff solely for him objecting to Defendant's discrimination.

B.  Also declaring that the Defendant damaged Plaintiff by way of Defendant's negligence, *respondeat superior*, assault, and battery.

C.  Awarding damages to Plaintiff for all lost wages and benefits resulting from Defendants' unlawful discrimination, retaliation, and conduct and to otherwise make him whole for

13

any losses suffered because of such unlawful employment practices and conduct;

D. Awarding Plaintiff compensatory damages for mental, emotional, and physical injury, distress, pain and suffering and injury to his reputation in an amount to be proven;

E. Awarding Plaintiff punitive damages;

F. Awarding Plaintiff attorneys' fees, costs, and expenses incurred in the prosecution of the action; and

G. Awarding Plaintiff such other and further relief as the Court may deem equitable, just and proper to remedy Defendants' unlawful employment practices.

Dated: Brooklyn, New York
October 27, 2024

                                              MASSIMI LAW PLLC

By: *Jessica Massimi*
                                              JESSICA MASSIMI, ESQ.
                                              99 Wall Street, Suite 1264
                                              New York, NY 10005
                                              jessica.massimi@gmail.com
                                              646-241-9800